UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
JAMES MISSEL,

                              Plaintiff,              07-CV-6593

                    v.                                **DECISION
                                                      and ORDER**
COUNTY OF MONROE, MONROE COUNTY
SHERIFF'S DEPARTMENT, PATRICK O'FLYNN,
SHERIFF OF THE MONROE COUNTY SHERIFF'S
DEPARTMENT, IN HIS OFFICIAL CAPACITY &
DEPUTY R. MICHAEL HILDRETH, IN HIS
OFFICIAL CAPACITY & INDIVIDUAL CAPACITY,

                              Defendants.
_____

## <u>INTRODUCTION</u>

    Plaintiff James Missel ("plaintiff") brings this action pursuant

to 42 U.S.C. § 1983 claiming that his civil rights were violated by

the defendants County of Monroe ("Monroe County"), Monroe County

Sheriff's Department ("Sheriff's Department"),[1] Patrick O'Flynn,

Sheriff of the Monroe County Sheriff's Department ("Sheriff O'Flynn")

(collectively "Monroe County defendants") and Deputy R. Michael

Hildreth ("Hildreth"). Specifically, plaintiff alleges that Hildreth

engaged in harassing behavior toward plaintiff by informing others

that plaintiff is a pedophile and using computer spyware to

surreptitiously monitor plaintiff's computer. Plaintiff alleges that

he reported Hildreth's conduct to the Sheriff's Department and as a

result of the internal affairs investigation Hildreth was criminally

---

[1] In the Monroe County defendants motion to dismiss, they contend that the Sheriff's Department is not a legal entity subject to suit under New York State law. See Defs. Br. at 11. Plaintiff concedes that the Sheriff's Department is not a legal entity that can be sued and accordingly does not object to the Sheriff's Department being removed as a named party. Thus, all claims against the Sheriff's Department are dismissed.

convicted for eavesdropping and official misconduct. Hildreth was terminated from the Sheriff's Department.

Monroe County defendants move to dismiss plaintiff's complaint against them as well as all claims asserted against Hildreth in his official capacity pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on grounds that plaintiff has failed to state a claim upon which relief may be granted. Specifically, defendants contend that plaintiff has failed to allege any specific policy or custom of Sheriff O'Flynn or Monroe County or that they were directly and personally involved in the events giving rise to plaintiff's claims and that Hildreth's actions or inactions do not permit an inference of such a policy or custom. In addition, Monroe County defendants contend that not only were Hildreth's actions not premised on a custom or policy, but that his conduct was neither known nor authorized in any way by Monroe County or Sheriff O'Flynn. Monroe County defendants argue that because of their lack of personal involvement in the alleged acts giving rise to plaintiff's claims, they may not be held liable for any violations of plaintiff's civil rights under 42 U.S.C. § 1983. Further, Monroe County defendants claim that because all claims against Hildreth in his official capacity are to be treated as claims against the Sheriff, all such claims should be dismissed for failure to state a claim. Finally, Monroe County defendants contend that plaintiff's punitive damages claims against them should be dismissed.

For the reasons set forth below, the Monroe County defendants' motion to dismiss is granted.

<u>**BACKGROUND**</u>

According to the allegations set forth in his Complaint, prior to June 2005, Hildreth[2] moved next door to plaintiff's[3] home. It is during this time that Hildreth began to harass plaintiff by making false complaints to the Sheriff's Department regarding plaintiff, making threats to arrest and imprison plaintiff, stalking plaintiff and taping a large rotting fish head on plaintiff's car. Further, plaintiff claims that while acting under color of state law, Hildreth visited each organization for which plaintiff was hired to assist children, including the Mom & Me (MOPS) program at the Browncroft Community Church, the Rochester Christian School, and the Penfield and Webster Recreation Departments, and informed them that plaintiff is a pedophile. As a result of Hildreth's actions, plaintiff was asked not to return at the MOPS program, the Rochester Christian School and the Penfield and Webster Recreation Departments and thus ruining his reputation in the community.

In addition, plaintiff alleges that Hildreth initiated an investigation into plaintiff by the Sheriff's Department, which produced no leads. According to the Complaint, frustrated with the lack of leads and while acting under the color of state law, Hildreth

---

[2]The Complaint alleges that Hildreth is an 18 year veteran Investigator of the Monroe County Sheriff's Department and is the first deputy that ever trained at Quantico, Virginia in computer forensics.

[3]Plaintiff is a retied Town of Irondequoit police officer.

devised a plan to install the spyware program called "eBlaster" on plaintiff's computer so that he could monitor plaintiff's every keystroke entered and website visited on plaintiff's computer. On May 11, 2005, plaintiff received an e-mail from a "Robin Mattox" from BOCES concerning a BlueBird Field Trip. The next day, on May 12, 2005, plaintiff received a follow up e-mail, which included an attachment for plaintiff to open on his computer to fill out for the alleged field trip. The Complaint states that plaintiff attempted to open the attachment but what he did not realize was that "Robin Mattox" was not a person hired by BOCES but was actually Hildreth posing as "Robin Mattox." According to plaintiff, Hildreth was acting in an investigatory capacity and under the color of state law attempted to install the "eBlaster" spyware program on plaintiff's computer allowing Hildreth to monitor each and every keystroke entered by plaintiff and every website visited by plaintiff on his computer presumably to catch plaintiff downloading illegal activity and have him arrested.

On May 20, 2005, plaintiff informed "Robin Mattox" via e-mail that he could not open the attachment she sent on May 12, 2005. Plaintiff then received an e-mail from "Robin Mattox" informing him that he is not to contact her or any of her students since she found out that he is on the "County Educational No Contact List." In fact, plaintiff is not listed on the "County Educational No Contact List." On June 15, 2005, Hildreth, while dressed in his uniform as Investigator for the Sheriff's Department informed plaintiff that he

knew all about "Robin Mattox" and told plaintiff that he had been researching his past. Plaintiff immediately contacted the Sheriff's Department. On June 16, 2005, plaintiff met with investigators from Internal Affairs and they took plaintiff's documents. A month later, on August 12, 2005, the same investigators informed plaintiff that Hildreth had spoken to them about plaintiff and that they had planned to interview Hildreth further. In September 2005, Lt. Paul Sienna from the Major Crimes Division met with plaintiff to discuss the referral of a criminal investigation of Hildreth from Internal Affairs, which included taking plaintiff's computer for investigation. The investigation took a year to be concluded during which time nothing was located on the computer to implicate plaintiff of any illegal activity. On June 21, 2006, Hildreth was charged with computer tampering, eavesdropping and official misconduct by a Grand Jury. He was convicted of eavesdropping and official misconduct in April 2007.

## **DISCUSSION**

### I.   **Monroe County Defendants' Motions to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed.R.Civ.P. 8(a). Specific facts are not necessary and the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" See Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Under Rule 12(b)(6), a plaintiff's

complaint will be dismissed if it fails to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. See Bell Atl. Corp., 127 S.Ct. at 1965 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In ruling on a motion to dismiss, the court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.1985) (citing Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir.1984)). Therefore, after interpreting the complaint in favor of the plaintiff, if it is determined that the plaintiff has failed to allege a set of facts which, if proven to be true, would entitle him to relief, the complaint will be dismissed. See Ferran v. Town of Nassau, 11 F.3d 21, 22 (2d. Cir.1993), cert. denied, 513 U.S. 1121 (1994); Sworn v. Western New York Children's Psychiatric Ctr., 269

Page  -6-

F.Supp.2d 152, 155 (W.D.N.Y.2003) (citing <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

II.   **Claims Against Sheriff O'Flynn and Monroe County**.

A.   **The First, Second, Third and Fourth Causes of Action**

The plaintiff has named Monroe County and Sheriff O'Flynn as defendants, arguing that the Monroe County defendants have a municipal custom or policy which allows officers to respond to complaints in a manner which violates constitutionally protected rights. The plaintiff also argues that Monroe County has not properly trained its officers, and that this lack of training allows them to act in a manner which violates constitutionally protected rights. The Monroe County defendants argue that plaintiff's section 1983 claims against Monroe County and Sheriff O'Flynn insufficiently alleges a custom or policy and that plaintiff's allegations are conclusory.[4]

According to 42 U.S.C. §1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any ... person within the jurisdiction thereof to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured ...." 42 U.S.C. § 1983. Municipalities are considered "persons" for" purposes of section 1983 claims, however, the municipality may not be sued under section 1983 unless the challenged action of a municipal

---

[4]Defendants argue that plaintiff makes conclusory statements that Hildreth acted "on behalf of the Monroe County Sheriff's Department," "as an instrument and agent for the County of Monroe" and "under the color of law." <u>See</u> Defs. Br. at 4.

employee was performed pursuant to a municipal custom or policy. <u>See</u> <u>Monell v. Dep't of Soc. Serv. of the City of New York</u>, 436 U.S. 658, 691-694 (1978). Moreover, a municipality cannot be held liable under section 1983 for the tortious conduct of its employees based on a theory of *respondeat superior*. <u>See</u> <u>id.</u> at 691.

To state a claim under § 1983, a plaintiff "must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." <u>See</u> <u>Dwares v. City of New York</u>, 985 F.2d 94, 98 (2d Cir. 1993) (citations omitted). Therefore, to state a claim for a civil rights violation, the plaintiff must allege that the defendant was personally involved in the alleged deprivation of his rights, and liability may not be based on vicarious liability or *respondeat superior* theories. <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989).

Here, the allegations in the first four causes of action allege solitary conduct on the part of Hildreth described as 42 U.S.C. § 1983 violations including fabrication of false evidence, making false statements and obstruction of justice, but do not assert any action on Sheriff O'Flynn or Monroe County. No action or conduct has been alleged under the first four causes of action on the part of the Sheriff or the County. The first cause of action is based on Hildreth's interception of plaintiff's electronic communications. <u>See</u> Complaint, ¶¶ 53-60. The second cause of action, which alleges

fabrication of false evidence, is premised on Hildreth personally initiating an investigation of plaintiff and ultimately placing spyware on plaintiff's computer. See id., ¶ 63. The third cause of action, which alleges making false statements, flows from Hildreth informing people that plaintiff was a pedophile. See id., ¶ 69. Moreover, the fourth cause of action, which alleges obstruction of justice, is based on Hildreth investigating plaintiff and using spyware to monitor his computer. See id., ¶ 78. Accordingly, plaintiff has been unable to show any personal involvement on the part of the Sheriff and because there can be no liability on the part of Sheriff O'Flynn or Monroe County under a *respondeat superior* theory, the plaintiff's Complaint is dismissed as to these four causes of action, with prejudice for failure to state a claim upon which relief can be granted.

**B.   The Fifth Cause of Action**

As previously discussed, in order for plaintiff to state a *prima facie* case of municipal liability under §1983, the plaintiff bears the burden of showing that (1) the plaintiff's civil rights were violated by an employee of the municipality acting under color of state law; and (2) the actions of that employee which deprived the plaintiff of a federal right were the result of an "official policy" of the municipality or a governmental custom, even though such custom has not necessarily received formal approval through the Monroe County's official decision-making channels. See Monell, 436 U.S. at

691. In other words, the acts in question must have been either officially sanctioned or ordered by the County.

Plaintiff in the instant action has introduced no evidence that Sheriff O'Flynn or the any other employee of Monroe County, except for Hildreth, has engaged in any widespread practice or "governmental custom" which resulted in the deprivation of plaintiff's constitutional rights. Thus, the issue becomes whether the plaintiff has shown evidence of any "official policy" which resulted in the deprivation of his constitutional rights.

A "policy" does not have to be long-standing or regularly applied. A government frequently chooses a course of action tailored to a particular situation. However, in order for a particular policy to represent the "official policy" of the municipality, it must have been a deliberate choice to follow a particular course of action from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

Here, the plaintiff has failed to allege a formal policy officially endorsed by either Sheriff O'Flynn or Monroe County. In addition, no factual connection is made between Hildreth's actions and any alleged conduct on the part of Sheriff O'Flynn or Monroe County that would indicate any specific policy or custom. The plaintiff has alleged no facts to support his allegations that Sheriff O'Flynn and Monroe County were on notice regarding Hildreth's prior conduct. No facts support assertions of Hildreth's misconduct in East Rochester.

See Complaint, ¶86. Moreover, plaintiff's allegation that Hildreth engaged in prior misconduct "of which plaintiffs are not currently aware" underscores the insufficient and speculative nature of his claims. See id., ¶87.

Furthermore, in order for a plaintiff to demonstrate a municipality's "deliberate indifference" to the constitutional rights of those within its jurisdiction, a plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." See City of Canton, 489 U.S. at 390. "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir.1995) (citing Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.1991); Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir.1986), cert. denied, 480 U.S. 922 (1987)).

In this case, the allegations of the Complaint do not show that Sheriff O'Flynn or Monroe County tacitly approved and/or ignored Hildreth's misconduct, or displayed deliberate indifference to his actions given the Sheriff's response to the situation wherein Hildreth was investigated, convicted of two crimes and fired for his actions towards plaintiff. The Complaint alleges that plaintiff brought his

complaints to the Monroe County Sheriff's Department on June 15, 2005 and an investigation into Hildreth's actions was launched the next day by the Internal Affairs Unit. <u>See</u> Complaint, ¶¶ 36, 40. After a lengthy investigation Hildreth was charged with computer tampering, eavesdropping and official misconduct wherein he was ultimately convicted of the latter two crimes. <u>See</u> <u>id.</u>, ¶¶ 46, 48. Thereafter, Hildreth was fired after being convicted. <u>See</u> <u>id.</u>, ¶ 49. Accordingly, the allegations in the Complaint show that the Sheriff investigated Hildreth for his misconduct and fired him after his conviction.

The plaintiff has not made sufficient factual allegations to support his claim that the Monroe County defendants had such a custom or policy which resulted in the deprivation of plaintiff's constitutional rights. Nor has plaintiff alleged other occurrences of similar conduct by Monroe County deputies, which would have permitted this court to draw an inference of such a custom or policy. In the absence of such factual support, however, this court must dismiss plaintiff's claim against Monroe County and Sheriff O'Flynn, with prejudice for failure to state a claim upon which relief can be granted.

### III. <u>Claims against Hildreth in His Official Capacity</u>

Plaintiff alleges claims against Hildreth in both his individual and official capacity under the first five causes of action. The Monroe County defendants argue that the first five causes of action should be dismissed as to Hildreth in his official capacity since these claims are to be treated as claims against the Sheriff. Plaintiff agrees with

the law in this Circuit but argues that the Complaint sets forth a Monell claim against the municipal defendants and as such the claims against Hildreth in his official capacity should not be barred.

Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." See Monell, 436 U.S. at 690 n. 55. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. See Brandon v. Holt, 469 U.S. 464, 471-72 (1985). It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); see also Hafer v. Melo, 502 U.S. 21, 23-27 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law'") (quoting Graham[5] quoting Monell).

---

[5]In Graham, the Court instructed that the course of the proceedings will indicate the nature of the liability (personal or official) sought to be imposed on an individual. The Graham court explained that in order for a person to be liable in his/her official capacity under §1983, the liability of the municipality must be established under Monell.

On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See Monroe v. Pape, 365 U.S. 167 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, Polk County v. Dodson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694). Thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. See Monell, supra; Oklahoma City v. Tuttle, 471 U.S. 808, 817-18); Graham, 473 U.S. at 166-67. Since the court has found that plaintiff has not been able to establish a Monell liability because Hildreth's conduct was not pursuant to a policy, custom, or practice of the Monroe County defendants, Hildreth cannot be liable in his official capacity. A finding that Hildreth is liable in his official capacity would be a finding that Sheriff O'Flynn and Monroe County are liable, a finding which the Court finds is not warranted given the allegations in the complaint. Thus, claims against Hildreth solely in his official capacity are dismissed, with prejudice, for failure to state a claim upon which relief can be granted.

## IV.   **Punitive Damages**

The Monroe County defendants seek dismissal of plaintiff's demand for punitive damages on the ground that in New York punitive damages may not be alleged by a claimant against the State and its political subdivisions. See Sharapata v. Town of Islip, 82 A.D.2d

350, 362 (2d Dept. 1981). Plaintiff does not oppose Monroe County defendants contention. Rather, plaintiff stresses that he is able to demand punitive damages against Hildreth in his individual capacity, since Hildreth allegedly committed the constitutional violations against him. See Newport v. Fact Concerts, Inc., 453 U.S. 247, 269-270 (1981). Thus, plaintiff's punitive damages claim against Monroe County and Sheriff O'Flynn are dismissed with prejudice. However, any punitive damages claim against Hildreth in his individual capacity are not dismissed.

## CONCLUSION

For the reasons set forth above, the Monroe County defendants' motion to dismiss plaintiff's first five causes of action are dismissed with prejudice for failure to state a claim upon which relief can be granted; all claims against Hildreth solely in his official capacity are dismissed with prejudice for failure to state a claim and plaintiff's punitive damages claim against Monroe County and Sheriff O'Flynn are dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        s/Michael A. Telesca
                                   MICHAEL A. TELESCA
                                   United States District Judge


Dated:    Rochester, New York
          June 4, 2008